# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DR. CHRISTIAN KREIPKE,
　　　　　　Appellant,

　　　　　v.

DEPARTMENT OF VETERANS
　　AFFAIRS,
　　　　　　Agency.

DOCKET NUMBER
CH-1221-15-0284-W-1

DATE: May 16, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Shereef Akeel, Esquire, Troy, Michigan, for the appellant.

Amy C. Slameka, Esquire, and Kristi Glavich, Esquire, Detroit, Michigan,
　　for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1　　　　The agency has filed a petition for review of the initial decision, which granted the appellant's request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the administrative judge should not have ordered interim relief, we AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2       The appellant, a part-time Health Science Specialist at the Veterans Administration's (VA's) John D. Dingell VA Medical Center, filed this IRA appeal alleging that the agency terminated him and failed to renew his excepted service temporary appointment in reprisal for his disclosures of grant fraud at the agency and at Wayne State University (WSU), where he held a dual appointment as an Assistant Professor under a Memorandum of Understanding. Initial Appeal File (IAF), Tab 1 at 6, Tab 8 at 6, 17-20, 23, 78-79, 81, 83. The agency terminated the appellant, effective October 11, 2013, when his temporary appointment expired.[2] IAF, Tab 11 at 6-11. The appellant alleged that, in

---

[2] It appears that the appointment from which the agency terminated the appellant was a temporary appointment, rather than a term appointment, because the Standard Form 50 indicates that it was time limited for a period of less than 1 year. IAF, Tab 11 at 9; *see Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 11 n.3 (2011); *compare* 5 C.F.R. § 316.301(a) (describing term appointments as lasting for

reprisal for his disclosures, WSU and the VA investigated him and charged him with research misconduct, which led WSU to terminate him in February 2012, and the VA to later terminate his active Merit Review Award, allow his appointment to expire, prohibit him from receiving VA research funds for 10 years, and seek the retraction of two articles published in the journal Neurological Research. IAF, Tab 1 at 57, Tab 8 at 7, 22. The appellant also asserted that the agency acted in reprisal for grievances he filed by failing to compensate him for $34,000 in salary and benefits allegedly owed to him under a VA grant, blocking a grant that would have expired in 2016, preventing him from receiving VA funding for 10 years, and changing his working conditions by confiscating his computer, erasing his research data, and firing his staff. IAF, Tab 1 at 1, 6, Tab 8 at 8-10, 22, Tabs 9-11, Tab 72 at 4-5.

¶3          In its Administrative Investigation Report, an Administrative Investigation Board (AIB) found 11 instances in which the appellant falsified research in publications, articles, and/or award applications by using the same image of certain tissue, biological processes, graphs, or blots to describe different experimental conditions. IAF, Tab 1 at 8-9, 10-12, 71. For example, the agency asserted that the appellant used the same image in a 2011 article published in the journal Neurological Research, two National Institutes of Health grant applications, a VA Merit Review application, and VA Research Day posters in 2009 and 2010, to depict sensorimotor cortex tissue, from animals subjected to traumatic brain injury (TBI), that had been treated with different antagonists or antibodies administered at different times and obtained at different lengths of time after TBI. *Id.* at 11-16. The agency asserted that these images were found in files located on the appellant's computer with file names that were inconsistent with the above depictions. *E.g.*, *id*. at 18, 25. The AIB recommended the termination of the appellant's "active Merit Review Award entitled 'Poly-trauma

more than 1 year but no more than 4 years), *with* 5 C.F.R. § 316.401(a) (describing temporary appointments as those that are not expected to last longer than 1 year).

following brain injury: towards a combinatorial therapy,'" a prohibition on his receipt of VA research funds for 10 years, and a retraction of the affected articles that were published in 2010 and 2011 in the journal Neurological Research. *Id.* at 57.

¶4    After a 6-day hearing, the administrative judge issued an initial decision finding that the appellant proved by preponderant evidence that the above actions constituted appealable personnel actions[3] and that he had a reasonable belief that he made protected disclosures of a violation of law, rule, or regulation in the form of grant fraud by the VA and by WSU that involved its dispersal of VA funds. IAF, Tab 119, Initial Decision (ID) at 2-3, 10, 12, 14-15.  She also found that the appellant engaged in protected activity by filing a grievance that sought a remedy for a violation of 5 U.S.C. § 2302(b)(8), which prohibits reprisal for whistleblowing.  ID at 12-13.  The administrative judge further found that the appellant proved that his disclosures and protected activity were contributing factors in the personnel actions because the acting officials knew of the disclosures and activity and the personnel actions occurred within a period of time such that a reasonable person could conclude that the disclosures and protected activity were contributing factors in those actions.  ID at 15-16.

¶5    In addition, the administrative judge held that the agency did not prove by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's disclosures.  ID at 17.  The administrative judge found that the agency's evidence was not strong because (1) the evidence did not support a finding that it was the appellant's actions, as opposed to those of his research partner or interns assisting on the research—all of whom had access to the shared computer on which the research data in question was found—that resulted in any falsified research, (2) the AIB did not have the authority to

---

[3] The failure to renew a temporary appointment, as well as the expiration of an appointment resulting from an agency's failure to extend the appointment, are appealable "personnel actions."  *Usharauli*, 116 M.S.P.R. 383, ¶ 11.

investigate the appellant's involvement because the research it investigated did not involve a VA grant or VA funding, and thus did not meet the definition of medical research under the applicable VA Handbook definition, (3) there was no evidence that any of the falsified data/graphs were prepared at the VA, as opposed to at the WSU laboratory, (4) it was unclear what harm the agency suffered or gain the appellant received even if the data/graphs had been falsified, given that there was no indication that the conclusions would have been different if the correct data had been used, (5) another researcher's name also appeared on the articles who was mainly responsible for the lab and who shared in the lab oversight responsibilities, and (6) any falsification was not willful and intentional, as found by the agency, but due to inadvertent inaccuracies and lax oversight of the lab. ID at 3, 18-30.

¶6    The administrative judge also found that the agency had a motive to retaliate because it continued to investigate the appellant for the same reasons, even though a VA Research Integrity Officer, Dr. K, twice investigated the matter and found insufficient evidence to convene an AIB, there was a strong academic relationship between WSU and the VA, and "[a]n inference can clearly be made that [the acting official] was attempting to appease WSU and protect their relationship by acquiescing in WSU's continued interference with the VA's employment of the appellant." ID at 4, 31-37. Thus, the administrative judge found a motive to retaliate stemming from WSU's improper influence on the agency to take actions against the appellant. ID at 37. The administrative judge found that the agency's failure to show that it takes similar actions against employees who are not whistleblowers, including against a nonwhistleblower co-author of the relevant articles, was a factor weighing against the agency. ID at 37-38. Finally, the administrative judge found that the appellant proved that the agency created a hostile work environment in reprisal for his protected activity, but that "the appellant's claims that he is still owed money under grant(s) and was subjected to a hostile work environment are not fully developed

as to the appropriate relief and are issues for supplemental proceedings for consequential and compensatory damages." ID at 39-40.

¶7   The administrative judge ordered the agency to rescind its decision to terminate the appellant's active Merit Review Award, rescind its decision to terminate his appointment and pay him any monies owed under the VA Merit Award/VA grants as a result of the termination of his appointment for VA research, and rescind its decision prohibiting him from receiving VA funds for 10 years. ID at 41. She also ordered the agency to provide interim relief. *Id.*

## ANALYSIS

### The administrative judge should not have ordered interim relief in this case.

¶8   The agency asserts on review that the "practical application of the interim order is not feasible nor is it within the scope of MSPB's authority" because a research misconduct investigation committee determined that the appellant committed research misconduct and the Board cannot overrule that decision, nor can the agency return him to his former position because "by law," he can no longer perform his job functions. Petition for Review (PFR) File, Tab 1 at 10. The agency also contends that the grant under which the appellant received funding has expired, and his temporary appointment has expired without an additional appropriation of research funds. *Id.* at 11-12. Thus, it asserts that the interim relief order is inappropriate. *Id.* at 13. The agency submits a letter informing the appellant and his attorney that "the practical application of the interim order is not feasible nor is it within the scope of MSPB's authority." *Id.* at 67. The letter further provides that the appellant is unable to return to his former Health Science Specialist position where his purpose is to conduct research, and that it is "unreasonable *per se* to place the Appellant on the payroll when by law he cannot perform the functions of his job." *Id.* Thus, the letter informs the appellant and his attorney that it "is not able to satisfy the requirement of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B)." *Id.* at 69.

¶9 The appellant has moved to dismiss the petition for review, asserting that the agency has not complied with the interim relief order by either returning him to duty or making a determination that his return would be unduly disruptive and providing him with pay and benefits. PFR File, Tab 3 at 5-7.

¶10 The appellant's temporary appointment expired effective October 11, 2013, before the issuance of the March 10, 2017 initial decision. IAF, Tab 11 at 6-9, Tab 119 at 1. Similarly, the Merit Review Award, which funded the appellant's position, expired 3 years after it had been awarded in October 2010. IAF, Tab 42, Subtab 7 at 2, Tab 59 at 56-57. An administrative judge should not order interim relief if, by the date of the initial decision, an appellant's term appointment has expired. *Herrin v. Department of the Air Force*, 95 M.S.P.R. 536, ¶ 16 (2004). Under these circumstances, we agree with the agency that the administrative judge should not have ordered interim relief in the form of rescinding the termination of the temporary appointment and the Merit Review Award, both of which had expired as of the issuance of the initial decision.

¶11 Further, the decision to grant interim relief is a matter of the Board's discretion. 5 U.S.C. § 7701(b)(2)(A)(i). Interim relief may not be appropriate in all cases in which the appellant prevails, and an administrative judge must determine this issue based on the facts of the particular case, balancing the benefits and burdens to the parties anticipated by the process of effecting the interim relief order. *Steele v. Office of Personnel Management*, 57 M.S.P.R. 458, 463 (1993), *aff'd*, 50 F.3d 21 (Fed. Cir. 1995) (Table). Thus, for example, administrative judges should exercise caution in granting interim relief in Office of Personnel Management (OPM) retirement appeals because doing so may result in OPM's payment of monies in contravention of its statutory authority and may necessitate OPM's recovery of the monies paid during the interim relief period if the Board reverses the initial decision. *Id.* at 463-64; *cf. Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 8 (2006) (holding that, when an appellant is receiving Office of Workers' Compensation Programs compensation when the

initial decision is issued, interim relief generally should not be ordered because doing so could result in the agency's payment of monies in contravention of statute). Similarly, we find here that the administrative judge should not have ordered interim relief in the form of a termination of the agency's decision to prohibit the appellant from receiving VA funds for 10 years because, among other things, any grant awarded during the interim relief period could result in the early termination of a funded research project, and the grantor's concomitant need to recover monies paid under the award, if the Board were to reverse the initial decision. We therefore decline to dismiss the agency's petition for review for failure to provide evidence of compliance with the interim relief order.

The administrative judge did not improperly require the agency to prove that the appellant falsified research.[4]

¶12      The agency contends that the administrative judge, in finding that the agency's evidence in support of its actions was not strong, improperly required it to meet the Board's standard for proving a falsification charge, even though it charged the appellant with research misconduct under a VA directive and its Handbook, which allegedly "have nothing to do with the MSPB charge of 'falsification' or any elements contained therein." PFR File, Tab 1 at 13-16. Rather, the agency asserts that its Handbook defines falsification as manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record. *Id.* at 15. The agency also asserts that the administrative judge never informed it that she would be applying this falsification standard in this case. *Id.* at 13, 15.

¶13      A memorandum from the Medical Center Director and the report from the AIB include numerous allegations and references concluding that the appellant "falsified" research. IAF, Tab 1 at 8-9, 11-15, 20, 22, 24-26, 28-44, 46, 48-55,

---

[4] The agency does not challenge on review the administrative judge's findings that the appellant made protected disclosures that were a contributing factor in the personnel actions at issue in this case. PFR File, Tab 1 at 10-29.

57. In fact, the AIB report considered whether "the preponderance of the evidence indicate[d] that the figures and supporting documentation were falsified intentionally, knowingly, or recklessly" by the appellant, and determined that the falsification was intentional, knowing, and willful. *E.g.*, IAF, Tab 1 at 10, 18-19, 24-25, Tab 65 at 8 (explaining that, under the VA Handbook, research misconduct, including falsification, must be committed intentionally, knowingly, or with reckless disregard for the integrity of the research). Under *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), when deciding whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board must consider, among other things, the "strength of the agency's evidence in support of its personnel action." The Board must consider the strength of the agency's reasons for its action, even in cases such as this when the agency has not taken a typical disciplinary action against the appellant based on misconduct. *See Gonzales v. Department of the Navy*, 101 M.S.P.R. 248, ¶ 12 (2006). Here, as set forth above, the underlying rationale for the agency's decisions to terminate the appellant's Merit Review Award, terminate his temporary appointment, and prohibit him from receiving VA funds for 10 years, which were specifically recommended by the AIB, was its determination that he had engaged in research misconduct in the form of intentional, knowing, and willful falsification of research publications, articles, and grant applications. Under these circumstances, we find that there is no material distinction between falsification under the VA Handbook and falsification as found by the administrative judge in this case. Thus, the agency has shown no error in the administrative judge's determination that the agency's allegations that the appellant falsified medical research was tantamount to a falsification charge, which required the agency to submit proof that the information submitted included a false statement, the false statement was material, and the employee acted with the requisite intent. ID

at 23; *see Leatherbury v. Department of the Army*, [524 F.3d 1293](#), 1300 (Fed. Cir. 2008).

¶14  Although the agency contends that it had no notice that the administrative judge would apply this falsification standard in determining whether the agency's evidence in support of its action was strong, the administrative judge informed the agency that it must show by clear and convincing evidence that it would have taken the same personnel actions absent the disclosures and that the Board would consider, among other things, the strength of the evidence the agency used in support of the personnel actions.  IAF, Tab 72 at 3.  The agency has identified no Board precedent that required the administrative judge to provide any more specific notice than that which she provided in this case.  PFR File, Tab 1 at 13-16.  In any event, the agency does not allege that it would have presented any additional or different evidence had it known that the strength of its evidence alleging falsification would depend on whether such evidence showed that the appellant made a material false statement with the requisite intent.  *Id.*; *see Panter v. Department of the Air Force*, [22 M.S.P.R. 281](#), 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).  Accordingly, we find no error in the administrative judge's determination that the agency did not present strong evidence in support of the personnel actions at issue in this case.  ID at 18-31.

<u>The administrative judge's failure to mention the testimony of one of the agency's witnesses does not mean that she did not consider it.</u>

¶15  The agency asserts that the administrative judge did not address the testimony of Dr. B, the lead research misconduct officer, who testified that the applicable Handbook the agency followed in its investigation was reissued without a change in the policies contained therein, which permitted the agency to investigate the research misconduct at issue in this case.  PFR File, Tab 1 at 17-21.  The administrative judge found, in addition to the fact that the agency's

evidence did not show that the appellant engaged in falsification, that the agency's evidence was not strong because "[t]here is strong evidence the AIB did not have authority to investigate the appellant's involvement because the research it investigated did not meet the definition of medical research under the applicable VA Handbook definitions previously discussed." ID at 23, 29-30. In support of that finding, the administrative judge relied on the deciding official's testimony that the definition of medical research subject to VA investigation changed after the AIB convened to investigate the appellant, but before it issued its report, to include unfunded VA grant applications. ID at 19-22. She found that the deciding official further testified that the Handbook in effect when the AIB convened applied to the appellant, and found that the AIB made no findings as to the only VA funded grant received by the appellant. ID at 21-22.

¶16        An administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health and Human Services*, [22 M.S.P.R. 129](), 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). In any event, although Dr. B testified on direct examination that, in his opinion, there was no change when the Handbook was "reissued," Hearing Transcript (HT) at 1054-55, 1087, 1193-94 (testimony of Dr. B), he conceded on cross examination that the new version included different, additional language, HT at 1152-58 (testimony of Dr. B). We find that the change in language in the different versions of the Handbook at the very least clarified the definition of "VA Research" by indicating that such research "may be funded by VA, by other sponsors, or be unfunded." *Compare* IAF, Tab 64 at 122, *with* IAF, Tab 65 at 11. Here, the administrative judge did not definitively find that the agency did not have the authority to conduct its investigation; rather, she merely found that there was strong evidence that it lacked such authority. ID at 23. Given the ambiguity in the different Handbook versions in this regard, we find that the agency has shown no error in the administrative judge's determination. *See* [5 C.F.R. § 1209.4]()(e) (defining "clear

and convincing evidence" as that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established).

¶17 The agency also asserts that the administrative judge did not address Dr. B's testimony that the agency's prior determinations—that there was insufficient evidence of misconduct to warrant a referral to an AIB—involved different allegations of research misconduct by the appellant than the allegations that ultimately led to the subsequent AIB investigation. PFR File, Tab 1 at 18.

¶18 In discussing the agency's motive to retaliate, the administrative judge reviewed the history of complaints that WSU brought to the agency's attention, including two separate allegations that were found by Dr. K, an agency Research Integrity Officer, to not warrant convening an AIB investigation due to insufficient evidence of research misconduct. ID at 4-5, 31-34. The administrative judge noted Dr. K's testimony that one of his inquiries "was on the identical issue the AIB was ultimately charged to investigate." ID at 33-34. The administrative judge concluded, however, that based on the strong academic relationship between the agency and WSU and the interplay among the various VA and WSU investigative offices, a motive to retaliate "stemmed from the improper influence of WSU over the VA to take action against the appellant" and the agency's attempt to "appease WSU and protect their relationship by acquiescing in WSU's continued interference with the VA's employment of the appellant." ID at 37. As set forth above, the administrative judge's failure to mention the testimony of Dr. B does not mean that she did not consider it. In any event, whether the allegations brought to Dr. K differed from the allegations that led to the AIB investigation does not affect the administrative judge's finding that a motive to retaliate existed based on the improper influence of WSU and the agency's attempt to appease it. We therefore find that, to the extent that the administrative judge failed to resolve a contradiction between the testimonies of Drs. K and B, *see Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587,

589 (1980) (finding that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and legal reasoning, as well as the authorities on which that reasoning rests), any such error did not affect the agency's substantive rights, *see Panter*, 22 M.S.P.R. at 282.

¶19    The agency further contends that the administrative judge did not consider Dr. B's testimony that the VA was obligated to look into allegations of research misconduct, and that almost all VA researchers hold appointments at affiliated universities, like WSU; thus, the agency asserts that there was no motive to retaliate against the appellant. PFR File, Tab 1 at 19. Even assuming, however, that the agency was required to investigate all allegations of research misconduct, that fact alone would not undermine the administrative judge's explained findings that the agency otherwise had a motive to retaliate against the appellant based on his disclosures in this particular case. *See Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012) (holding that those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees). Moreover, Dr. B's testimony regarding appointments at affiliated universities addressed questions as to whether there was a conflict of interest on the part of the appointed AIB members. HT at 1079-80 (testimony of Dr. B). The fact that there may not have been a conflict of interest for the AIB members under the agency's Handbook does not mean that the agency did not have a motive to retaliate based on whistleblowing activity.

¶20    Finally, although the administrative judge found that the agency did not sufficiently explain the reasons why the agency relieved Dr. K of the responsibility to investigate the appellant after he twice found insufficient evidence to convene an AIB, ID at 37, the agency asserts that Dr. B testified that Dr. K was relieved of that responsibility because of a conflict of interest, namely,

Dr. K's being called as a witness on behalf of the appellant in his WSU grievance, PFR File, Tab 1 at 24; HT at 1066-67 (testimony of Dr. B); HT at 154-55 (testimony of Dr. K). Even assuming that the agency did provide an explanation for relieving Dr. K of that responsibility, it does not, as explained above, overcome the administrative judge's ultimate finding that the agency did not prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's disclosures based on its weak evidence in support of those actions, its motive to retaliate, and its failure to show that it took similar actions against nonwhistleblowers. ID at 17-39.

The agency did not show that it took similar actions against nonwhistleblowers.

¶21 The agency asserts on review that Dr. B testified that the agency had permanently prohibited two individuals from receiving VA funds and conducting VA research because of research misconduct. PFR File, Tab 1 at 22. Thus, it contends that the administrative judge erred when she found that the agency did not present evidence that any action was taken against similarly situated nonwhistleblowers. *Id.*; ID at 37-38. Moreover, the agency asserts that the administrative judge erred when she found that the agency did *not* take action against Dr. R, a nonwhistleblower who was a lab partner and co-author on the appellant's research papers, because Dr. R was no longer a VA employee at the time of the investigation and the agency therefore could not have taken any action against him. PFR File, Tab 1 at 22-23.

¶22 When deciding whether an agency has shown by clear and convincing evidence that it would have taken the same personnel actions in the absence of the disclosures, the Board will consider, among other things, any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323. Although Dr. B's testimony was consistent with the agency's assertions on review, he did not testify that the two individuals who were permanently prohibited from receiving funding for VA research were not whistleblowers. HT at 1111, 1122-24

(testimony of Dr. B). Thus, the administrative judge correctly found that the agency did not provide evidence that it took actions against similarly situated nonwhistleblowers. ID at 37-38. As found by the administrative judge, an agency ignores this factor at its own peril, considering the agency's advantage in accessing this type of evidence. ID at 38; *see Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016). Thus, regardless of the agency's reasons for not taking action against Dr. R, the nonwhistleblower co-author of the relevant articles, it has still failed to submit evidence showing that it took similar actions against employees who were not whistleblowers but who were otherwise similarly situated. We therefore discern no error in the administrative judge's determination that this factor weighs against the agency. ID at 38.

The administrative judge did not err in discrediting an agency exhibit involving newly acquired evidence.

¶23    In its closing submission, the agency submitted an exhibit consisting of a July 13, 2016 retraction notice that it discovered after the close of the record and that it asserted impeached the appellant's credibility and showed the effect of his research misconduct in the scientific community. IAF, Tab 116. The administrative judge struck the exhibit from the record because the record had already closed and the document was not relevant to the agency's burden of proof, but did not strike the agency's reference to the exhibit from its closing submission. IAF, Tabs 114, 117. The administrative judge nevertheless found in the initial decision that the retraction at issue was actually "consistent with the appellant's testimony and evidence of the steps he took once the discrepancy in data was reported to him by the lab student." ID at 26. The agency contends on review that the administrative judge erred because the appellant did not testify about that retraction notice, but instead testified about a different article, and that it would have been impossible for the appellant to have testified about a retraction notice that was issued only after the hearing concluded and that was included in the agency's closing submission. PFR File, Tab 1 at 25-26.

¶24      Even assuming that the appellant's testimony related to a different article than the one at issue in the July 13, 2016 retraction, the agency has not shown that the July 13, 2016 retraction notice itself could have impeached the appellant's credibility.  As of the appellant's testimony at the hearing on April 26-28, 2016, the retraction notice in question had not been issued.  Thus, the agency has established no basis for finding that his testimony at the hearing, that there had been no retractions of his articles or textbooks, HT at 225-26 (testimony of the appellant), was not credible.  Moreover, the agency has not otherwise explained how the July 13, 2016 retraction, which occurred after the personnel actions at issue in this case and appears to have involved an article that was not addressed in the AIB report, IAF, Tab 1 at 10-57, constituted evidence supporting the agency's ultimate burden of proving by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's protected disclosures.

The agency has not shown that the documents it submits for the first time on review are new and material to the issues in this case.

¶25      The agency submits on review evidence that four journal articles authored by the appellant have been retracted after an investigation by WSU.  PFR File, Tab 1 at 27, 31-65.  Only two of the four retracted articles were addressed in the AIB report.  *Compare* PFR File, Tab 1 at 31-36, 38-43, *with* IAF, Tab 1 at 11. The agency contends that, although the administrative judge relied upon a lack of retractions to suggest that the appellant did not engage in research misconduct and that the agency was retaliating against him, the retraction of the four articles after the hearing shows the scope of his misconduct.  PFR File, Tab 1 at 27-28.

¶26      Evidence offered merely to impeach a witness's credibility is generally not considered new and material.  *Wyeroski v. Department of Transportation*, 106 M.S.P.R. 7, ¶ 9, *aff'd*, 253 F. App'x 950 (Fed. Cir. 2007).  Thus, to the extent that the agency has submitted the retractions to impeach the appellant's credibility, it has not shown that this evidence is new and material.  Even

assuming, however, that the evidence is new, the Board generally will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision. *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 15 (2015). In weighing the agency's evidence that it would have taken the same personnel actions in the absence of the appellant's disclosures, the Board must assess the evidence as it stood at the time of the actions. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1372 (Fed. Cir. 2001); *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 12 (2010). That is because the actions taken by the agency officials must be weighed in light of what they knew at the time they acted; later developments cannot be used either to support or undercut the validity of the actions taken. *Yunus*, 242 F.3d at 1372. Therefore, the agency's proffer of this evidence for the first time on review is not of sufficient weight to establish by clear and convincing evidence that it would have taken the same personnel actions in the absence of the disclosures and does not warrant a different outcome from that of the initial decision. The four retraction articles do not, therefore, provide a basis for granting the agency's petition for review. *See* 5 C.F.R. § 1201.115(a).

¶27   Accordingly, we deny the agency's petition for review and affirm the initial decision's determination to award corrective action in this case.

## ORDER

¶28   We ORDER the agency to rescind its decisions to (1) terminate the appellant's active Merit Review Award entitled "Poly-trauma following brain injury:  towards a combinatorial therapy," (2) terminate the appellant's temporary appointment, and to pay him any monies owed under the VA Merit award/VA grants as a result of the termination of his temporary appointment, and (3) prohibit the appellant from receiving VA funds for a period of 10 years. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The

agency must complete this action no later than 20 days after the date of this decision.

¶29     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶30     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶31     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶32     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
## COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

**NOTICE OF APPEAL RIGHTS**[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). *****Do not process online SF50s until notified to do so by DFAS Civilian Pay.****

☐ 5) Certified timecards/corrected timecards. *****Do not process online timecards until notified to do so by DFAS Civilian Pay.****

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.